**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JENNIFER LYNN BEATTY,

Plaintiff,

v.

TODD BLANCHE,
*U.S. Attorney General*,[1]

Defendant.

Case No. 25-cv-2758-MJS

**MEMORANDUM OPINION**

Jennifer Beatty is a lawyer who worked for the Federal Bureau of Investigation. Just shy of a year into the job—and before the end of her probationary period—the FBI terminated Beatty's employment based on what it claimed were conduct and performance issues. Beatty sees it differently. She says the Bureau discriminatorily fired her because of her age (49 at the time) and in retaliation for raising concerns about discrimination. She now sues the FBI asserting claims of age discrimination, retaliation, and hostile work environment. The case is before the Court on the FBI's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 15.) For the reasons explained below, the Court agrees that Beatty fails to plead plausible claims of age discrimination and hostile work environment, but it finds that her retaliation claim survives. So, the Court **GRANTS IN PART** and **DENIES IN PART** the FBI's motion to dismiss.

[1] Under Fed. R. Civ. P. 25(d), Attorney General Blanche is substituted for former Attorney General Bondi.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following facts, accepted as true, from Beatty's complaint. *Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018).

Beatty began working for the Federal Bureau of Investigation in April 2023 as an Assistant General Counsel in the FBI's Forensic Science Law Unit ("FSLU"). (ECF No. 1 ("Compl.") ¶ 22.) Throughout her employment, Beatty's first-line supervisor was Audra Bartels, who is reportedly thirteen years Beatty's junior. (*Id.* ¶ 23.) Beatty was allegedly older than many of her colleagues, as well, including two individuals who Beatty points to as "comparators": Noreen Ahmed and Katherine Scott, who were three and four years younger than Beatty, respectively. (*Id.* ¶ 24.)

Beatty's complaint chronicles a variety of "differential treatment" she claims to have suffered during her FBI employment, mostly at the hands of Bartels. For instance, Bartels allegedly did not offer Beatty the same professional opportunities as others, including by not placing Beatty on one of several "teams" within FSLU. As Beatty tells it, Bartels assigned Ahmed to lead the "Giglio Production Team" and Stott to lead the "Discovery Team," but Beatty was "not assigned to any of the FSLU teams." (Compl. ¶ 27.) Bartels also reportedly excluded Beatty from various meetings and working groups and only permitted her to have "limited contact" with more senior officials, including when it came to briefing the FBI's General Counsel. Beatty claims she was essentially "relegated to a 'secretarial role'" in meetings. (*Id.* ¶ 28.) Separately, Beatty claims she received a less favorable evaluation than Ahmed and Stott during a performance check-in and did not receive a monetary award that her colleagues received. (*Id.* ¶ 29.) Beatty further alleges that Bartels spoke about her in particularly critical terms, including by texting a client that Beatty was "f***ing brand new" and typing "AM I BEING UNCLEAR???" when referring to Beatty. (*Id.* ¶¶ 30–31.) Beatty says that Bartels' critical tone carried through to their direct interactions, as well,

with Bartels purportedly treating Beatty in an "unduly harsh" manner when she raised various personal issues with Bartels, including a recent death in her family and marital problems. (*Id.* ¶ 32.) Furthermore, Beatty says that Bartels "attacked [her] lack of flexibility and adaptability" and told her to do "everything like them"—*i.e.*, her younger colleagues, Ahmed and Stott—including as to "the proper clothes and shoes to wear." (*Id.* ¶¶ 33–34.)

In a meeting on November 2, 2023, Beatty told Bartels that she believed she "was being treated differently because of her age." (Compl. ¶ 55.) After that, Beatty says, Bartles subjected her to even more adverse treatment. The next day, November 3, Bartels reported Beatty as a possible "insider threat" to the FBI's Insider Threat Office. (*Id.* ¶ 57.) Despite the referral, though, no investigation was ever initiated. (*Id.*) Also in the wake of the November 2 meeting, Beatty's "workload decreased significantly" (*id.* ¶ 61), and she claims that Bartels began to compile information about her "alleged performance deficiencies"—including by soliciting her coworkers for input—with the goal of removing Beatty from the FBI (*see id.* ¶¶ 58–60). According to the complaint, Bartels completed a draft recommendation to terminate her employment by December 19, 2023, "thirty-one (31) federal working days from the November 2 meeting." (*Id.* ¶ 62.)

In February 2024, Beatty took medical leave for foot surgery. (Compl. SOF ¶ 141.)[2] While Beatty was on leave, Bartels finalized the necessary documentation to process her termination, and the FBI then issued Beatty a termination letter on March 11, 2024, citing "performance and conduct as the reasons for her termination." (*Id.* ¶¶ 143, 146–47.) Beatty was still in her probationary period at the time her employment was terminated. (*Id.* ¶¶ 19, 144.)

[2] Beatty appended a separate statement of facts to her complaint that supplements the complaint itself. Where the Court refers to those paragraphs, it cites them as "Compl. SOF." For clarity's sake, the Court reviewed the entirety of Beatty's complaint and the appended statement of facts in resolving this motion.

Following administrative proceedings, Beatty timely filed this lawsuit in August 2025. She asserts three claims for relief: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (2) unlawful retaliation under the ADEA and Title VII of the Civil Rights Act of 1964 ("Title VII"); and (3) hostile work environment under the ADEA and Title VII. In response, the FBI moved to dismiss under Rule 12(b)(6). (ECF No. 15 ("Mot.").) The motion is fully briefed and ripe for decision. (*See* ECF No. 18 ("Opp'n"); ECF No. 20 ("Reply").)

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is warranted when a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" means that the facts pleaded must allow for a "reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Under Rule 12(b)(6), a court must afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But a court need not accept as true "legal conclusions couched as factual allegations[,]" *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam) (citation omitted), nor will mere "recitals of the [legal] elements of a cause of action … suffice" to forestall a motion to dismiss, *L. Xia v. Tillerson*, 865 F.3d 643, 650 (D.C. Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

Finally, although courts should "afford a liberal reading to a complaint filed by a *pro se* plaintiff," *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014), that approach "does not ordinarily apply to *pro se* lawyers," *Spence v. United States Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024); *see also Mann v. Castiel*, 681 F.3d 368, 377 (D.C. Cir. 2012) (citing

approvingly the proposition that no extra latitude was owed a *pro se* lawyer with "formal legal training"). In keeping with this precedent, and given Beatty's status as a licensed attorney, the Court does not apply any added latitude or liberality to its assessment of Beatty's claims here.

## DISCUSSION

The FBI mounts arguments against each of Beatty's claims. On review of the complaint's well-pled allegations, the Court agrees with the Bureau that Beatty's claims of age discrimination and hostile work environment (Counts I and III) do not pass muster under Rule 12(b)(6) but finds that Beatty pleads sufficient facts to state a plausible claim of retaliation (Count II).

### I. Age Discrimination

Beatty first asserts a claim of age discrimination under the ADEA. The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To state a plausible claim of discriminatory treatment under the ADEA, a plaintiff need only allege "the two essential elements of a discrimination claim": "that (i) the plaintiff suffered an adverse employment action (ii) because of [her] … age[.]" *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *Yoder v. Architect of the Capitol*, 2025 WL 915611, at *4 (D.D.C. Mar. 26, 2025). In seeking dismissal of Beatty's age-discrimination claim, the FBI attacks both elements. It argues that, except for her employment termination, none of the alleged mistreatment being challenged by Beatty amounts to an adverse action covered by the statute. And it argues that Beatty fails to plead sufficient facts to establish the plausible inference that *any* of the alleged mistreatment, including Beatty's ultimate employment termination, was based on Beatty's age. Because the Court agrees with the Bureau's second argument, it need not reach the first.

As a starting point, because Beatty was in her late forties during her time with the FBI—and was 49 years old, specifically, when the Bureau terminated her employment—she is covered by the ADEA. *See* 29 U.S.C. § 631(a) (protecting individuals "at least 40 years of age"). And, at a minimum, Beatty certainly experienced an adverse employment action when she was discharged from the FBI in March 2024, as the Bureau appropriately acknowledges. The question that remains, then, is whether Beatty pleads sufficient facts to raise an inference of age-based discrimination in connection with her employment termination (or any other alleged mistreatment, for that matter). *See, e.g.*, *Yoder*, 2025 WL 915611, at *4 (explaining that an ADEA plaintiff must "present facts that give rise to an inference of discrimination") (citation modified) (quoting *Hill v. Bd. of Trs. of Univ. of D.C.*, 146 F. Supp. 3d 178, 184 (D.D.C. 2015)). "A plaintiff can establish this inference 'through either direct evidence of animus' or 'by showing that [she] was treated differently from similarly situated employees.'" *Jones v. D.C. Off. of Unified Commc'ns*, 2025 WL 2977585, at *3 (D.D.C. Oct. 22, 2025) (alteration in original); *Regis v. Noem*, 2025 WL 1580808, at *3–4 (D.D.C. June 4, 2025). Beatty invokes both approaches here. Neither succeeds.

First, Beatty argues that she alleges "direct evidence of animus" that itself suffices to establish the plausibility of her claim. She points to allegations that Bartels and her second-line supervisor allegedly "attacked [her] conduct and communication style" and her "lack of flexibility and adaptability." (Opp'n at 21, 23 (citing Compl. ¶ 34).) These remarks, Beatty argues, directly reflect "her supervisors' age-based animus." (*Id.* at 23.) But none of the alleged statements amounts to direct evidence of discrimination under governing caselaw—*i.e.*, "evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference*[.]" *Oviedo v. WMATA*, 299 F. Supp. 3d 50, 59 (D.D.C. 2018), *aff'd*, 948 F.3d 386 (D.C. Cir. 2020) (quoting *Hajjar–Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 125 (D.D.C. 2014)); *see*

*also Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (describing direct evidence as evidence "that itself shows … bias in the employment decision") (citing *Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam)). As a few examples in contrast, courts have found direct evidence where a hiring manager reportedly told an applicant "you're old," as the reason they could not perform the physical labor of a job, *Stone v. Landis Constr. Corp.*, 442 F. App'x 568, 569 (D.C. Cir. 2011) (per curiam), or when a manager allegedly told an employee on the night she was fired that "maybe [she was] too old to work," *Robinson v. Red Coats, Inc.*, 31 F. Supp. 3d 201, 216 (D.D.C. 2014). The allegations here are different. Although one can argue that criticizing an employee's lack of "flexibility and adaptability" rings of ageism, that interpretation requires an inferential step and is not self-evident from the remarks themselves. Thus, Beatty's allegations are not direct evidence that can establish the necessary discriminatory link for her claim.[3]

Second, invoking a comparator theory, Beatty contends that her complaint creates an inference of discrimination because she alleges that she was treated less favorably than similarly situated employees who were younger. Specifically, Beatty focuses on two former FSLU colleagues as comparators: Ahmed and Stott. (*See* Opp'n at 23–24 (citing Compl. ¶ 27).) Although Beatty does assert a variety of alleged disparate treatment that she experienced as compared to Ahmed and Stott, and although she does assert that both of those former colleagues were more junior to her in age, her comparator theory comes up short all the same.

[3] The same goes for Beatty's allegations—albeit not ones she highlights in her brief—that Bartels said Beatty should wear different clothes and shoes (*see* Compl. ¶ 33). *See, e.g.*, *Gonzalez v. Sutton Park Ctr. for Nursing & Rehab.*, 2025 WL 920607, at *8 (S.D.N.Y. Mar. 26, 2025) ("Even accepting Plaintiff's position that she perceived … comments" about how she was dressed "to be ageist, they are 'not discriminatory because [they are] age-neutral.'" (citing *Nielsen v. Pioneer Bank*, 2018 WL 4689056, at *3 (N.D.N.Y. Sept. 28, 2018))). In some contexts, one might argue that comments along these lines inferentially show some sort of ageist bias, but the remarks themselves are not discriminatory on their face.

To begin with, and as the FBI correctly argues, the age gap between Beatty and her comparators is not significant enough to allow for an inference of discrimination based on age. The Supreme Court explained decades ago that no such inference can be drawn when a plaintiff is treated less favorably than someone "insignificantly younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Although there is no clearcut boundary between an age disparity that is "significant" versus "insignificant," the Court is guided by the D.C. Circuit's decision in *Dunaway v. International Brotherhood of Teamsters*, which found an age difference of seven years insufficient when the plaintiff relied solely on comparator evidence in support of their claim. *See* 310 F.3d 758, 767 (D.C. Cir. 2002). Other cases in this District have likewise found comparable age gaps to be insufficient in this context. *See, e.g.*, *Steele v. Carter*, 192 F. Supp. 3d 151, 171 (D.D.C. 2016) ("[A]n age difference of six years cannot provide support for an inference of [age] discrimination."), *rev'd in part on other grounds sub nom*, *Steele v. Mattis*, 899 F.3d 943 (D.C. Cir. 2018); *see also Clifton v. Fed. Nat'l Mortg. Ass'n*, 36 F. Supp. 2d 20, 26 (D.D.C. 1999) (finding a three-year age gap inadequate to create a discriminatory inference). Whatever the ultimate dividing line, Beatty's allegations do not come close to it because her proffered comparators—Ahmed and Stott—are only three to four years younger. (Compl. ¶ 24.) And, as the above caselaw reflects, that gap falls comfortably on the insignificant side of the line.

More, and apart from the lack of a "significant" age disparity, the Court agrees with the FBI that Beatty separately fails to show that her comparators are similarly situated enough for their allegedly preferential treatment over Beatty to create a discriminatory inference. At the motion-to-dismiss stage, a plaintiff does not necessarily have to "include factual allegations showing that the comparator's circumstances are nearly identical to the plaintiff's in all relevant aspects." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 531 (D.C. Cir. 2025) (internal quotation marks omitted).

But a complaint that proceeds on a comparator theory—like this one—must contain "allegations that a comparator was similarly positioned to the plaintiff in at least some relevant respects" and include enough factual detail to allow a court to "plausibly infer that discrimination caused the defendant's differential treatment." *Id.* Here, Beatty alleges that Ahmed and Stott shared the same job title in the FLSU and reported to the same supervisor, Bartels. (Compl. ¶¶ 24, 27.) So far, so good. But as the FBI emphasizes, Beatty was a *probationary* employee throughout her time with the FBI, including when she was discharged, and Beatty does not allege the same about Ahmed or Stott. This distinction—one between probationary and permanent employees—typically renders comparators inapt, especially in federal government service. *See, e.g.*, *Holbrook v. Reno*, 196 F.3d 255, 262 (D.C. Cir. 1999) ("[A] probationary employee [is] not similarly situated to a permanent employee[.]"); *SaintPreux v. Mayorkas*, 2021 WL 3912180, at *5 (D.D.C. Sept. 1, 2021) (similar), *aff'd*, 2022 WL 1177328 (D.C. Cir. Apr. 14, 2022); *Stephens v. Yellen*, 2021 WL 5493024, at *7 (D.D.C. Nov. 23, 2021) (similar). The Court sees no reason to conclude differently here.

For starters, even though the FBI presses this argument specifically (*see* Mot. at 16-17), Beatty ignores it (*see generally* Opp'n). Her failure to respond to that argument is tantamount to a concession. *See, e.g.*, *Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*, 217 F. Supp. 3d 79, 82 (D.D.C. 2016) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 2017 WL 2373115 (D.C. Cir. Apr. 4, 2017); (*see also* ECF No. 17 (order warning Beatty about this very risk).) But concession or not, the point remains that a probationary employee, at least in many workplace contexts, is differently positioned than a permanent employee, including when it comes to an employer's assessment of conduct and performance and, in turn, long-term retention. Beatty's

failure (or inability, perhaps) to allege that Ahmed or Stott were probationary employees like her during the relevant period undermines her claim that they are apt comparators.

In sum, because Beatty fails to plead facts to show that the FBI took any action against her because of her age—whether her employment termination or otherwise—the Court will dismiss Beatty's age discrimination claim in Count I for failure to state a claim.

## II. Retaliation

Through Count II, Beatty asserts a claim of retaliation, seemingly under both Title VII and the ADEA. "To state a claim for retaliation under Title VII or the ADEA, a plaintiff must plausibly allege that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action by her employer, and (3) the two are causally connected." *Spence*, 109 F.4th at 539 (citation modified); *see Tomasello v. Rubin*, 167 F.3d 612, 619 (D.C. Cir. 1999) ("[T]he test for determining retaliation under the ADEA and Title VII is identical."). As the Supreme Court recently clarified, an employment action is "materially adverse" for retaliation purposes if it "causes 'significant' harm." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 357 (2024) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Lewis v. Bessent*, 2026 WL 2516785, at *6 (D.D.C. Aug. 26, 2026) ("[T]he adverse-action standard for retaliation claims is now *more* demanding than for discrimination claims."). In seeking dismissal of Beatty's retaliation claim(s), the FBI argues that the complaint does not plead any materially adverse action except for Beatty's employment termination. And as to her employment termination, the FBI argues that Beatty fails to plead any causal link between her discharge and any preceding protected activity.

As an initial matter, to the extent Beatty asserts a claim of retaliation under Title VII, that claim fails because her alleged protected activity simply does not implicate that statute. Title VII affords protection based on the protected characteristics of "race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a). By contrast, the protected characteristic of *age*—which is what Beatty allegedly complained about here (*see* Compl. ¶ 55)—is covered by the ADEA, *see* 29 U.S.C. §§ 623(a), 631(a). Beatty's retaliation claim therefore arises under the ADEA, not Title VII. The Court thus dismisses any retaliation claim under Title VII. *See Jones*, 2025 WL 2977585, at *5 (employing this same analysis to dismiss claims premised on Title VII).

Turning back to the FBI's dismissal arguments, the Court agrees that Beatty fails to plead any materially adverse action other than her termination. For one thing, even though the FBI squarely pressed this argument (*see* Mot. at 12-15), Beatty did not address it in her opposition, responding only that she pled a material adverse action in the form of her "unlawful termination." (Opp'n at 29.) Once again, Beatty's failure to engage with the Bureau's argument operates as a concession. *Dawn J. Bennett Holding*, 217 F. Supp. 3d at 82. In any event, the only other alleged wrongdoing that comes close to qualifying as "material" under the governing standards is Bartels' internal referral of Beatty for FBI investigation as a potential insider threat. (Compl. ¶ 57.) That occurrence certainly sounds like a significant one, at least on its face. But the complaint confirms that the referral went nowhere: "[t]he referral allegations were so non-threatening that, within a week or two, an investigation was not initiated." (*Id.*) Even assuming this type of investigation referral can be a materially adverse action in some circumstances, *see Leach v. Yellen*, 2023 WL 2496840, at *7 (D.D.C. Mar. 14, 2023) (collecting cases), the Court is hard-pressed to see how the referral here caused the requisite "significant harm" to qualify as materially adverse, *Muldrow*, 601 U.S. at 357, when no adverse consequences are alleged to have flowed from the referral; indeed, Beatty's complaint confirms that the whole exercise was basically dead on arrival.

That leaves Beatty's termination-based retaliation claim. On that front, the FBI argues that Beatty fails to allege any plausible connection between her termination and her November 2

protected activity because the complaint reflects that Bartels "treated [Beatty] differently throughout her tenure … and had expressed dissatisfaction with her performance well before the relevant meeting." (Mot. at 15.) This argument fails. There is certainly support for the notion "that an adverse employment action that was already contemplated before a plaintiff engaged in protected activity cannot be evidence of retaliation." *See, e.g.*, *Terveer v. Billington*, 34 F. Supp. 3d 100, 119 (D.D.C. 2014) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). Under that logic, if Beatty's complaint revealed that Bartels was already planning to terminate Beatty before the November 2 meeting, the Bureau's argument might be on stronger footing.

But the complaint basically says the opposite. It asserts that immediately after the November 2 meeting, Bartels "*started* a campaign" aimed at pushing Beatty out of the FBI. (Compl. ¶ 56 (emphasis added).) If anything, the FBI's arguments are more akin to a summary-judgment-style theory as to why Beatty cannot show that the Bureau's apparent performance-based justifications for her discharge are pretextual. This is not the proper posture for that argument. For present purposes, Beatty alleges that she engaged in protected activity on November 2, 2023,[4] and Beatty alleges that Bartels promptly began to collect information to support Beatty's termination and then created a written draft recommendation of Beatty's termination about six weeks later, by December 19, 2023. (Compl. ¶¶ 57-62.) At the motion-to-dismiss stage, this close temporal proximity between Beatty's alleged protected activity and the ensuing adverse action is sufficient to infer causation. *See, e.g.*, *Trant v. Murray*, 2021 WL 2366293, at *2 (D.D.C. June 9, 2021) (two-month gap sufficient to create inference of causation); *Perkins v. WCS Constr., LLC*, 2018 WL

[4] The FBI does not dispute, at least in the present posture, that Beatty sufficiently pleads that she engaged in protected activity based on her alleged comments during the November 2 meeting with Bartels.

5792828, at *9 (D.D.C. Nov. 5, 2018) (similar). Thus, Beatty's termination-based retaliation claim is sufficiently pled to survive Rule 12(b)(6) and proceed to discovery.[5]

## III. Hostile Work Environment

Finally, through Count III of her complaint, Beatty alleges a claim for hostile work environment—once again, seemingly under both Title VII and the ADEA.

Before jumping into the governing legal standards, the Court starts by clarifying the proper contours of the hostile work environment claim Beatty pursues. First, Beatty's allegations do not implicate a claim under Title VII for the same reasons explained above: the underlying protected characteristic animating her claims is *age* (and her *age-related* protected activity), and age is protected by the ADEA, not Title VII. So, to the extent the complaint can be read to assert a hostile work environment claim under Title VII, the Court dismisses any such claim. Beyond that, Beatty's briefing makes clear that her claim is one for *retaliatory* hostile work environment, rather than *age-based* hostile work environment—*i.e.*, the allegedly improper motive behind the claimed harassment was Beatty's protected activity in complaining about age discrimination, not Beatty's age itself. (*See, e.g.*, Opp'n at 31 ("Ms. Beatty has pled enough facts to sufficiently state a plausible claim for hostile work environment in retaliation for engaging in a protected activity."); *id.* at 34 ("Ms. Beatty has established a causal temporal connection between Ms. Bartels' harassment and when Ms. Beatty engaged in protected activity based upon her age.").) In simple terms, then, Beatty's claim is one for retaliatory hostile work environment under the ADEA.

[5] The Bureau's attempt to focus on the actual date of Beatty's termination in March 2024—versus the December 2023 date on which Bartels is alleged to have finished a draft recommendation to carry out that termination—misses the mark. The Court is concerned, at least at this juncture, with the timing of when the termination was set in motion, and the well-pled allegations show that date to be no later than December 2023, within a matter of weeks after Beatty allegedly complained to Bartels about age discrimination.

To properly plead such a claim, Beatty must allege "she was subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) (citation modified). By contrast, "a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)); *see also Menoken v. Dhillon*, 975 F.3d 1, 5–6 (D.C. Cir. 2020) ("[I]ndividual acts that may not be actionable on [their] own [can] become actionable due to their cumulative effect." (first alteration in original) (citation omitted)). The relevant circumstances, however, generally do not include "'work-related actions by supervisors' … since they cannot 'be characterized as sufficiently intimidating or offensive in an ordinary workplace context.'" *Lewis v. Yellen*, 2021 WL 5416634, at *7 (D.D.C. Nov. 19, 2021) (quoting *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011)). Examples of such "work-related actions" can include a decrease in workload, heightened management oversight or added scrutiny of assignments, lowered performance evaluations, and the like. *See id; Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012). Finally, "[a] *retaliatory* hostile work environment claim additionally requires 'a causal connection between the harassment and [the] protected activity.'" *Dorsey v. D.C. Dep't of Health*, 2026 WL 1831546, at *5 (D.D.C. June 25, 2026) (second alteration in original) (quoting *Graham v. Holder*, 657 F. Supp. 2d 210, 216 (D.D.C. 2009)).

Applied here, these principles confirm that Beatty fails to plead sufficient facts to state a plausible claim of retaliatory hostile work environment. She premises her claim on the following alleged instances of harassment: (1) Bartels referring Beatty for an insider threat investigation in early November 2023; (2) Bartels reportedly "surveying [Beatty's] co-workers for complaints" about Beatty to use in the termination process; (3) Bartels requiring that Beatty "relinquish her office key prior to departing for foot surgery"; and (4) Bartels allegedly not returning Beatty's personal property for more than a year after her termination. (Opp'n at 32-33.)[6] Further, Beatty asserts that Bartels used what she calls a "workplace slur" against her—reportedly calling her a "workplace shooter"—in "sworn out-of-court testimony." (*Id.* at 37 (citing Compl. ¶ 71).)

These allegations come up short. Many of Beatty's complaints boil down to "work-related actions" by Bartels that are not actionable through a hostile work environment claim, including the added scrutiny of Beatty's work and performance (whether directly or through other colleagues) and the request that Beatty relinquish her office key before commencing a leave of absence. More, several of Beatty's complaints post-date her employment with the FBI altogether, including that Bartels allegedly took more than a year to return her personal property after Beatty was discharged and ostensibly "humiliated" Beatty by requiring her to ask for her property during Bartels' administrative deposition. The same holds true for the alleged "workplace shooter" comment, given that Beatty appears to allege that Bartels made that remark during that same deposition rather than during Beatty's employment. Because those interactions all took place *after* Beatty's employment ended, Beatty cannot possibly show that they "alter[ed] the conditions of her *employment* and create[d] an abusive *working* environment," *Brooks*, 748 F.3d at 1276 (emphases added) (citation modified), no matter how offensive Beatty might have construed them to be. That

[6] Related to this last point, Beatty says she was "publicly humiliated, ridiculed, and intimidated when she had to request access to her personal property in Ms. Bartels' deposition in March 2025." (Opp'n at 35.)

leaves Bartels allegedly referring Beatty for investigation as an insider threat. And on the surrounding facts alleged here, the Court simply cannot conclude that this incident created a hostile work environment, especially given that the referral did not even lead to an investigation, much less any tangible negative consequences.

In short, because Beatty does not allege sufficient facts to establish a plausible claim of retaliatory hostile work environment, the Court will dismiss Count III of the complaint.

## CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the FBI's motion. Specifically, the Court **DISMISSES** Beatty's claims of age discrimination and hostile work environment in Counts I and III, but Beatty's retaliation claim in Count II shall proceed.

Dated: September 28, 2026

MATTHEW J. SHARBAUGH
United States Magistrate Judge